# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNIFRAX I LLC,                          )
                                         )
    Plaintiff,                     )
                                         )     Case No.:
v.                                       )     _____1:22-CV-0
                                         )     0341-LJV
                                         )
BRIAN BRADLEY AND NUTEC, INC.            )
                                         )
    Defendants.                    )
    Defendant.

**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff Unifrax I LLC, known as Alkegen, by counsel, for its Complaint for Damages and Injunctive Relief against ~~Defendant~~Defendants Brian Bradley ("Bradley")~~,~~ and Nutec, Inc. ("Nutec") hereby alleges and states as follows:

**I.     PARTIES**

1.     Plaintiff Unifrax I LLC ("Unifrax") is in the business of providing high-performance specialty fibers and inorganic materials used in high-temperature industrial, automotive, and fire protection applications.

2.     Defendant Bradley was previously employed by Unifrax ~~I LLC~~, most recently as ~~a Senior Field Sales Engineer~~Distribution Manager at its facility located in Tonawanda, New York.

3.     Bradley resigned from Unifrax to work for its direct competitor, Defendant Nutec.

**II.     JURISDICTION AND VENUE**

4.     ~~3.~~ This is an action seeking damages and injunctive relief against Bradley based on violations of his statutory and common-law obligations to Unifrax.

1

5.    4.Unifrax I LLC is a Delaware limited liability company with its principal place of business in Tonawanda, Erie County, New York.

6.    5.Bradley is a resident of New York and resides in or around Lockport, Niagara County, New York.

7.    Defendant Nutec is a Delaware entity registered to do business in New York. Nutec may be served with process via the Secretary of State at its address 28 Liberty St., New York, NY, United States, 10005 or via its Registered Agent C T Corporation System at 28 Liberty St., New York, NY, 10005.

8.    6.Jurisdiction is proper in federal court pursuant to 28 U.S.C. § 1331 because one of Unifrax I LLC's claims is based on a federal question.  Specifically, it has brought a cause of action under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.

9.    7.The Court has jurisdiction to hear this case and venue is proper in this Court.

### III.    FACTUAL BACKGROUND

**A.    Bradley's Employment with and Contractual Obligations to Unifrax I LLC**

10.    8.On October 24, 1988, Bradley and Unifrax I LLC's predecessor, The Carborundum Company (collectively "Unifrax"), entered into an employee agreement (the "Agreement"), pursuant to which Bradley would serve as an employee of Unifrax at its facility in Western New York.  (Ex. A).

11.    9.Unifrax was formed in 1996, when it purchased the Fibers Division of The Carborundum Company.

12.    10.Bradley resigned from Unifrax in April 2022. In total, Bradley worked for Unifrax for over thirty years.

2

13.    ~~11.~~ Bradley started his tenure with Unifrax as an Application Engineer ~~and eventually moved into an~~, then Product Manager, Engineering Manager ~~role~~and finally Distribution Manager.    Bradley was classified as a manager from ~~1988-2019~~1999-2020 and again in 2022.

14.    He was a Field Sales Engineer during the period of 2019-2022.

15.    ~~12.~~ In his ~~role~~various roles with Unifrax, Bradley gave technical guidance to Unifrax customers on product selection, product technical properties, system design using Unifrax products, costing of insulation systems, and installation of Unifrax products / systems at customer sites in support of sales or directly in sales (from 2019-2022).

16.    ~~13.~~ Additionally, Bradley trained Unifrax sales personnel and customers.

17.    ~~14.~~ From 2019 until ~~2020~~2022, Bradley served as a Field Sales Engineer for Unifrax in Unifrax's Northeastern territory.

18.    ~~15. From 2020 until his separation in~~Starting on January 1, 2022, Bradley served as ~~a Senior Field Sales Engineer~~Distribution Manager for Unifrax~~.  Essentially, Bradley served as Unifrax's distribution sales manager~~ for all of North America.  In this role, Bradley directly managed Unifrax's top distributors in North America for Unifrax's Industrial Thermal Management Products.  Bradley managed approximately ten to twelve of Unifrax's biggest ~~customers~~distributors for its Industrial Thermal Management Group in North America.

19.    ~~16. In~~Over the ~~over thirty~~last 20 years ~~that Bradley worked for~~of his employment with Unifrax, ~~he~~Bradley was the primary point of contact for many of Unifrax's largest customers and distributors in North America. Bradley developed and maintained trusted relationships—both professionally and personally—with Unifrax's customers.

20.    ~~17.~~ Bradley was a ~~high level,~~ trusted employee of Unifrax, who was given access to Unifrax's confidential and trade secret information, including confidential information about, among other things, Unifrax's customers, prospective customers, pricing, budget, designs, formulations, application engineering, operational capabilities, supply chains, and profit margins, all of which he could use and apply to meet a customer's unique needs.

21.    ~~18.~~ Bradley was also provided access to Unifrax's goodwill~~,~~ and developed trusted relationships with Unifrax's customers and prospective customers.

22.    ~~19.~~ In the Agreement, Bradley agreed that he would, "not use any of [Unifrax's] . . . trade secrets in any business or enterprise, nor will [he] aid, abet or assist any person or company in using any such secrets."  (Ex. A, § 7).

23.    ~~20.~~ In the Agreement, Bradley promised to not undertake, "planning for or organization of any business activity competitive with the work [he] perform[ed], or with the profit unit [he] work[s] with in as an employee of [Unifrax]."  (Ex. A, § 10).

24.    ~~21.~~ In the Agreement, Bradley acknowledged that: "All memoranda, including but not by way of limitation, all figures, notes, reports, data, documents, accounts, plans drawings, formulae and recipes furnishing or containing any information as to [Unifrax's] . . . trade secrets which shall come into [his] possession at any time during the period of [his] employment or otherwise shall nonetheless be and remain the property of [Unifrax]."  (Ex. A, § 8).

25.    ~~22.~~ In the Agreement, Bradley covenanted that upon the "Termination of [his] . . . employment, [he] will not take with [him] or keep in [his] possession or make or retain copies of any such memoranda . . . but, on the contrary, will turn them over to [Unifrax]."  (Ex. A, § 8).

26.    23. Further, the Agreement made clear that Bradley's duties thereunder "shall inure to the benefit of [Unifrax], its affiliated companies, and their respective successors and assigns." (Ex. A, § 14).

27.    24. The Agreement is a binding and enforceable contract between Unifrax and Bradley.

28.    25. Unifrax performed its obligations under the Agreement.

29.    26. Bradley owed and continues to owe legal and contractual obligations to Unifrax pursuant to the Agreement and the law.

5

**B.     Bradley ~~Downloads~~Develops and Executes a Plan to Steal Unifrax's Confidential Information, ~~Resigns~~Resign and Immediately ~~Joins~~Join the Employment of a Local Competitor in the Same or Similar Role**

30.     In the last six weeks leading up to Bradley's last day of employment and loss of access to Unifrax's password protected servers, Bradley engaged in a premediated systematic plan to steal Unifrax's competitively sensitive confidential business information and trade secrets to enable Bradley access and use of this non-public information for his and Nutec's benefit, while performing his job at Nutec as its sole engineer.

31.     As part of this plan, Bradley intentionally downloaded an enormous volume of Unifrax's competitively sensitive confidential business information and trade secrets and copied those files to an external hard drive that he could access and reference with ease following his resignation from Unifrax, and while a Nutec employee.

32.     ~~27. On~~One day after agreeing to terms with Nutec on his new position, on or about March 9, 2022, Bradley accessed Unifrax's cloud-based file storage (www.box.com) and downloaded a significant amount of Unifrax's confidential information (including quote directories).

33.     ~~28.~~ On or about March 22, 2022, Bradley again accessed Unifrax's cloud-based file storage (www.box.com) and downloaded approximately 63 different files containing Unifrax's confidential information regarding Application Engineering Quarterly Reports containing 23 years of Unifrax-developed application engineering information. In the hands of a competitor, this information alone could act as a blueprint for the creation of a clone of an entire area of Unifrax's business – an area which Unifrax invested significant time and resources into developing. Significantly, this application engineering related confidential information had

nothing to do with Bradley's sales-related duties at Unifrax.  There would be no reason for Bradley to access this information – let alone, to download it in troves.

34.    The Box.com folders containing Unifrax information was protected by specific usernames and passwords to limit access.

35.    On or about March 22, 2022, Bradley also accessed the password-protected servers of Unifrax to download tens of thousands of confidential documents related to application engineering information, pricing information, quotes to current and prospective customers, sales documentation related to customers, training documentation, costing information, design drawings and business plans.

36.    He also copied these files to the same external hard drive referenced above.

37.    29. On or about March 29, 2022, Bradley again accessed Unifrax's cloud-based file storage (www.box.com) and downloaded Unifrax's confidential information concerning its module pricing module for a large Unifrax customer.

38.    In all, Bradley intentionally downloaded approximately 160 gigabites of Unifrax's internal confidential information without Unifrax's consent. Bradley admitted that he took this incredibly large volume of data without Unifrax's consent because he might need that information going forward while working for Nutec.

39.    Importantly, Bradley has admitted to the wrongdoing of intentionally downloading Unifrax's competitively sensitive confidential business information and trade secrets without its consent in order to have ongoing access to this valuable materials in his role at Nutec. Per his sworn testimony in this lawsuit, Bradley admitted that he took this information because he "might need it."

7

40.    30. The fileOne of the files Bradley downloaded from the quote directory contains the master log of all quotes from 2020-2022 (2109 rows of data), the identities of the customers or prospective customers, the specific contact person, email addresses, lead time and the nature of the pricing.  All of this is confidential trade secret information of Unifrax which would be of significant value to a competitor.

41.    31. The Pricing Sheet for the large customer lists the type, grade, density, thickness, product description, year of sale, quantity and price of products sold from Unifrax to its customer from 2016 through 2021.  This is also confidential trade secret information of Unifrax which would be of significant value to a competitor.

42.    32. Of particular concern, technical documents concerning a specific area of Unifrax's business and engineering items that Bradley had not worked in for at least 3 years, were among the confidential files that Bradley downloaded.

43.    Bradley admitted to spending hours deleting the Unifrax information and documents that he took without Unifrax's consent off of his Unifrax-issued laptop.

44.    Bradley intentionally deleted the confidential Unifrax information he downloaded to his Unifrax-issued laptop in an effort to cover his wrongful conduct.

45.    In apparent recognition that he wrongfully downloaded Unifrax's confidential information, Bradley placed the material stolen from Unifrax onto an external hard drive because, among other things, he was concerned about how Unifrax would perceive his actions, if known.

46.    33. On April 22, 2022, a mere threefour weeks after he downloaded significant amounts of Unifrax's confidential information without its consent, Bradley resigned from his Unifrax position.

47. 34. The same day, after Bradley submitted his letter of resignation to Unifrax, he sent a mass email – recipients of which included co-workers and Unifrax customers – using his Unifrax email account, informing them of his resignation, new employment, and updated contact information. (Ex. B).[1]

48. 35. Per his email, immediately after his resignation Bradley began working for Nutec USA ("Nutec"), as a its Business Manager – Engineered Systems. (Ex. B).

49. 36. Nutec is a direct competitor of Unifrax and operates in the same geographic areas as Unifrax.

50. 37. Bradley's employment with Nutec is the same or similar capacity as was his employment some of the positions he held with Unifrax. As summarized by Bradley in his email, he is now Nutec's "application engineer and product manager for USA/Canada operations." (Ex. B).

51. 38. As summarized by Bradley in his email, in his new position with Nutec, he is remaining "at [his] current residence in Western New York, no relocation." (Ex. B).

52. 39. Upon information and belief, Bradley was hired to establish a as the sole employee in the new department of application engineering for Nutec for the United States and Canada.

53. 40. As noted above, Bradley served as an application engineer or Engineering Manager for Unifrax for over nearly 30 years.

54. 41. Upon information and belief, Bradley has used or disclosed Unifrax's confidential information, which may be for Nutec's competitive benefit.

---

[1] Bradley's personal contact information was redacted from this exhibit for privacy reasons, but Unifrax can provide this to the Court upon request.

55.    After beginning work at Nutec, Bradley admitted to changing the design of Nutec products, including anchoring systems for modules, based on non-public business information and knowledge that he obtained at Unifrax.

56.    Unifrax expended significant resources developing its proprietary high temperature modules for a wide range of heat processing vessels, which include products such as anchoring and attachment systems, which are protected by a series of patents.

57.    Likewise, Unifrax expended significant resources developing its proprietary furnace hardware and accessories for a range of furnace lining applications, which are protected by a series of patents.

58.    The Unifrax products described in paragraphs 56-57 are valuable products on the marketplace.

59.    Unifrax takes significant physical and technical safeguards to maintain the confidentiality of its trade secrets and proprietary information, including, but not limited to, those related to the products described in paragraphs 56-57.

60.    Bradley made changes to Nutec's anchoring system products, although these Nutec products did not have performance issues, had worked perfectly well, and had not been modified in close to nine (9) years.

61.    Unifrax's anchoring systems are arguably more advanced and superior products to Nutec's anchoring system. Upon information and belief, Bradley made modifications to Nutec's anchoring system to, among other things, show his value as a Nutec employee.

62.    42. Upon information and belief, Bradley is continuing to engage in conduct in violation of the Agreement and the law.

63.    43. Further, Bradley is a high level former employee, with knowledge and likely possession of Unifrax's confidential information, working for a direct competitor in a capacity he worked in for Unifrax.  Thus, even if Bradley had not downloaded the trove of confidential information, he cannot reasonably be expected to fulfill his new job responsibilities without utilizing Unifrax's confidential information.

**C.    Nutec Employs Bradley as its Sole Engineer for U.S. and Canada and Took No Measures to Ensure That Bradley Would Not Use Unifrax Engineering Information in his New Job**

64.    Nutec was aware of the alleged theft of Unifrax information by Bradley and his contractual obligation to maintain the confidentiality of Unifrax information on or about May 6, 2022.

65.    Despite that knowledge, Nutec permitted Bradley to be actively involved in meetings to implement his suggested changes to Nutec's module anchoring systems based on confidential information he obtained during his employment with Unifrax.

66.    On information and belief, the suggested changes from Bradley based on confidential information obtained while working for Unifrax has been implemented and may already be on the market.

67.    In addition, in his role as Business Manager – Engineered Systems for Nutec, Bradley is utilizing the confidential, trade secret information of Unifrax to provide application engineering support for Nutec sales people to provide a custom solutions for various applications in the industrial thermal industry.

68.    Unifrax has spent significant resources over the years developing processes for addressing customers' needs as well as its unique anchoring systems, some of which are protected by patents.

69.    44. In light of the circumstances, injunctive relief is necessary to ensure that Unifrax does not suffer or continue to suffer irreparable harm.

**C.   Causes of Action**

12

## IV.        CAUSES OF ACTION

### COUNT I:  VIOLATION OF DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 *et seq.* (AGAINST BRADLEY)

70.    45. Paragraphs 1-44 1-69 are incorporated herein by reference.

71.    46. Unifrax owns trade secrets and confidential information that derives independent economic value, actual or potential, from not being generally known or ascertainable except through proper means.

72.    47. Unifrax takes and has taken reasonable measures to keep such information secret. Unifrax has taken significant physical and technical safeguards to protect and maintain the confidential nature of its trade secrets and proprietary business information.

73.    48. Unifrax's trade secrets are related to supply chain information, pricing, profit margins, customer information, budget, designs, formulations, application engineering, operational capabilities, and marketing strategies of products that are used and sold in interstate commerce.

74.    49. Bradley willfully and maliciously acquired, disclosed, and/or used Unifrax's trade secrets through improper means and without Unifrax's permission.

75.    50. Further, because of Bradley's duties and responsibilities with Unifrax, it would be nearly impossible for Bradley to work for Nutec without disclosing Unifrax's trade secrets and confidential information.

76.    51. Unifrax has no adequate remedy at law to stop the irreparable damage Bradley has caused or will continue to cause by his unlawful conduct.

77.    52. Unless Bradley is enjoined, this misconduct will continue, and Unifrax will continue to suffer losses, including the retention, disclosure, and impermissible use of its

13

confidential information and trade secrets, and loss of clients, employees, future revenue, and goodwill.

78.    Among its recoverable damages, Unifrax requests the recovery of its attorneys' fees and costs incurred in connection with this lawsuit, which it can recover due to Bradley's willful and malicious misappropriation of Unifrax's protected trade secrets.

**COUNT II:  BREACH OF CONTRACT (AGAINST BRADLEY)**

79.    ~~53.~~Paragraphs ~~1-52~~1-78 are incorporated herein by reference.

80.    ~~54.~~In the Agreement, Bradley agreed not to use or disclose any confidential information.   Bradley breached this duty by, among other things, repeatedly downloading confidential information from Unifrax's cloud storage and servers in advance of his resignation~~,~~ and for apparently competitive purposes.

81.    ~~55.~~In the Agreement, Bradley agreed not to plan for or organize certain competitive business activities.   Bradley breached this duty by, among other things, using Unifrax's email system to tout his new role with a competitor after his resignation and by repeatedly downloading confidential information from Unifrax's cloud storage in advance of his resignation for competitive purposes.

82.    ~~56.~~In the Agreement, Bradley agreed to return all confidential information belonging to Unifrax at the time his employment ended.   ~~On information and belief,~~ Bradley breached this duty by, among other things, failing to return the information he downloaded from Unifrax's cloud storage and servers.

83.    ~~57.~~On information and belief, since joining Nutec, Bradley has used and/or disclosed Unifrax's confidential information for Nutec's and/or his own competitive benefit.

14

84.    58. Given that he is the Business Manager – Engineered Systems for Nutec, Bradley has disclosed, or will inevitably disclose, Unifrax's trade secrets and confidential information in performing his duties and responsibilities for Nutec.

85.    59. The breaches by Bradley of his confidentiality obligations pursuant to the law and the Agreement have caused and will continue to cause injury, loss, and damage to Unifrax, and continuation of these breaches will result in immediate and irreparable injury, loss, and damage to Unifrax.

### COUNT III:  BREACH OF FIDUCIARY DUTY (AGAINST BRADLEY)

86.    Paragraphs 1-85 are incorporated herein by reference.

87.    Bradley shared a fiduciary relationship with Unifrax as its longtime employee.

88.    Among other things, Bradley was required to maintain Unifrax's competitively sensitive confidential business documents and information as confidential and not to use this information for Bradley's self-interest or to benefit any third party or competitor, like Nutec.

89.    Further, Bradley was required to exercise good faith and loyalty to Unifrax in the performance of his Unifrax employment duties, including, but not limited to, with respect to accessing and using Unifrax's competitively sensitive confidential business documents and information.

90.    Bradley breached the fiduciary duties that he owed to Unifrax by stealing Unifrax's competitively sensitive confidential business documents and information discussed herein and by storing this information in a manner that allowed him continued access and use to this material following the end of his Unifrax employment and as a Nutec employee.

91.    Bradley also breached the fiduciary duties that he owed to Unifrax to refrain from using Unifrax's trade secret and proprietary information to benefit third parties, like Nutec.

15

92. Among other things, as a Nutec employee, Bradley used Unifrax trade secret and proprietary information that he only gained access to as a Unifrax employee to make improvements and modifications to Nutec product lines that compete with Unifrax products. Non-exhaustive examples of this include that Bradley used Unifrax trade secret and proprietary information to make to product improvements and modifications to Nutec products that compete with Unifrax products, including those concerning: (a) Unifrax's high temperature modules for a wide range of heat processing vessels, which includes without limitation, anchoring/attachment systems, and (b) furnace hardware and accessories for a range of furnace lining applications.

93. Bradley's breach of the fiduciary duties that he owed to Unifrax caused Unifrax to suffer irreparable harm and damages in an amount to be determined at trial.

## COUNT IV:  BREACH OF COMMON LAW DUTY OF LOYALTY
### (AGAINST BRADLEY)

94. ~~60.~~ Paragraphs ~~1-59~~ 1-93 are incorporated herein by reference.

95. ~~61.~~ While employed by Unifrax, Bradley owed a common law duty of loyalty to Unifrax.

96. ~~62.~~ Bradley's employment with Unifrax ended upon his resignation on or about April 22, 2022.

97. ~~63.~~ Bradley breached his common law duty of loyalty by, among other things, using Unifrax's email system to tout his new role with a competitor. In doing so, Bradley gave Unifrax's longstanding customers direct access to Bradley, effectively asking Unifrax's customers to remain professionally in touch with him during his role working at a direct Unifrax competitor.

16

98. ~~64.~~ Bradley also breached his common law duty of loyalty by repeatedly downloading confidential information from Unifrax's cloud storage in advance of his resignation for competitive purposes.

99. ~~65.~~ Bradley's actions breached his common law duty of loyalty to Unifrax.

100. ~~66.~~ Bradley's breaches of his common law duty of loyalty have caused and will continue to cause injury, loss, and damages to Unifrax, and continuation of these breaches will result in immediate and irreparable injury, loss, and damages to Unifrax.

~~**INJUNCTIVE RELIEF**~~

**COUNT V:  COMMON LAW MISAPPROPRIATION OF TRADE SECRETS, CONFIDENTIAL AND PROPRIETARY INFORMATION (AGAINST BRADLEY)**

101. Paragraphs 1-100 are incorporated herein by reference.

102. Unifrax possessed trade secrets, confidential and proprietary information, which are described herein, that it maintained confidentially in secret from the public.

103. Unifrax has taken significant physical and technical safeguards to protect and maintain the confidential nature of its trade secrets and proprietary business information.

104. Bradley has made use of Unifrax's trade secrets, confidential and proprietary information in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.

105. Bradley has made use of Unifrax's trade secrets, confidential and proprietary information in his role as a Nutec employee on Nutec's behalf.

106. Among other things, Bradley willfully downloaded Unifrax's confidential information because he felt insecure that he might forget Unifrax's confidential information and wanted to make sure he maintained access to this information for use while working for Unifrax's competitor Nutec.

17

107.    Bradley's wrongful use of Unifrax's trade secrets, confidential and proprietary information has caused it to sustain damages in an amount to be determined at trial.

**COUNT VI:  COMMON LAW MISAPPROPRIATION OF TRADE SECRETS, CONFIDENTIAL AND PROPRIETARY INFORMATION (AGAINST NUTEC)**

108.    Paragraphs 1-107 are incorporated herein by reference.

109.    Unifrax possessed trade secrets, confidential and proprietary information, which are described herein, that it maintained confidentially in secret from the public.

110.    Unifrax has taken significant physical and technical safeguards to protect and maintain the confidential nature of its trade secrets and proprietary business information.

111.    Through the conduct of its employee Bradley, who, among other things, modified Nutec products, such as its anchoring system, based on trade secret and proprietary business information that he obtained from Unifrax, Nutec has made use of Unifrax's trade secrets, confidential and proprietary information in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.

112.    Bradley has made use of Unifrax's trade secrets, confidential and proprietary information in his role as a Nutec employee on Nutec's behalf.

113.    Nutec's wrongful use of Unifrax's trade secrets, confidential and proprietary information has caused it to sustain damages in an amount to be determined at trial.

**COUNT VII:  VIOLATION OF DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 *et seq.* (AGAINST NUTEC)**

114.    67. Paragraphs 1-661-113 are incorporated herein by reference.

115.    Unifrax owns trade secrets and confidential information that derives independent economic value, actual or potential, from not being generally known or ascertainable except through proper means.

18

116. Unifrax takes and has taken reasonable measures to keep such information secret. Unifrax has taken significant physical and technical safeguards to protect and maintain the confidential nature of its trade secrets and proprietary business information.

117. Unifrax's trade secrets are related to supply chain information, pricing, profit margins, customer information, budget, designs, formulations, application engineering, operational capabilities, and marketing strategies of products that are used and sold in interstate commerce.

118. To benefit Nutec, Bradley willfully and maliciously acquired, disclosed, and/or used Unifrax's trade secrets through improper means and without Unifrax's permission.

119. Further, because of Bradley's duties and responsibilities with Unifrax, it would be nearly impossible for Bradley to work for Nutec without disclosing Unifrax's trade secrets and confidential information.

120. Unifrax has no adequate remedy at law to stop the irreparable damage Bradley has caused or will continue to cause by his unlawful conduct.

121. Unless Nutec is enjoined, this misconduct will continue, and Unifrax will continue to suffer losses, including the retention, disclosure, and impermissible use of its confidential information and trade secrets, and loss of clients, employees, future revenue, and goodwill.

122. Among its recoverable damages, Unifrax requests the recovery of its attorneys' fees and costs incurred in connection with this lawsuit, which it can recover due to the willful and malicious misappropriation of Unifrax's protected trade secrets used to Nutec's benefit.

**COUNT VIII:  AIDING AND ABETTING BRADLEY'S BREACH OF FIDUCIARY DUTY (AGAINST NUTEC)**

123. Paragraphs 1-122 are incorporated herein by reference.

19

124.    Bradley shared a fiduciary relationship with Unifrax as its longtime employee.

125.    As set forth herein, Bradley breached fiduciary duties that he owed to maintain Unifrax's competitively sensitive confidential business documents and information as confidential, and not to use this information for Bradley's self-interest, or to benefit any third party or competitor, like Nutec.

126.    Further, Bradley was required to exercise good faith and loyalty to Unifrax in the performance of his Unifrax employment duties, including, but not limited to, with respect to accessing and using Unifrax's competitively sensitive confidential business documents and information.

127.    Bradley breached the fiduciary duties that he owed to Unifrax by stealing Unifrax's competitively sensitive confidential business documents and information discussed herein and by storing this information in a manner that allowed him continued access and use to this material following the end of his Unifrax employment and as a Nutec employee.

128.    Bradley also breached the fiduciary duties that he owed to Unifrax to refrain from using Unifrax's trade secret and proprietary information to benefit third parties, like Nutec.

129.    As of May 6, 2022, Nutec had actual and constructive knowledge that Bradley had access to Unifrax's competitively sensitive confidential business documents and information as a Nutec employee.

130.    Nutec also had actual and constructive knowledge that Bradley provided engineer services to Unifrax similar in scope to the services that Bradley was hired to provide to Nutec, where he has served as the company's sole engineer.

131.    Despite this knowledge, Nutec knowingly induced or participated in Bradley's breach of fiduciary duties in a variety of ways, including, without limitation, the following.

20

Nutec allowed Bradley to make modifications and improvements to its product lines, including, but not limited to, anchoring and attachment systems of modules, while using confidential information and/or documents obtained from Bradley's Unifrax employment.

132. Further, Nutec employed Bradley at Nutec effectively as its sole engineer, with job responsibilities and exposure to many of the same customers that Bradley serviced at Unifrax.

133. Nutec knowingly induced or participated in Bradley's breach of fiduciary duties in connection with Bradley's use of Unifrax trade secret and proprietary information that he only gained access to as a Unifrax employee, to make improvements and modifications to Nutec product lines that compete with Unifrax products. Non-exhaustive examples of this include that Bradley used Unifrax trade secret and proprietary information to make to product improvements and modifications to Nutec products that compete with Unifrax, including those concerning: (a) Unifrax's high temperature modules for a wide range of heat processing vessels, which includes without limitation, anchoring/attachment systems, and (b) furnace hardware and accessories for a range of furnace lining applications.

134. Nutec aided and abetted Bradley's breach of the fiduciary duties that he owed to Unifrax and, in so doing, caused Unifrax to suffer irreparable harm and damages in an amount to be determined at trial.

### COUNT IX:  UNFAIR COMPETITION (AGAINST NUTEC)

135. Paragraphs 1-134 are incorporated herein by reference.

136. Nutec modified and/or improved its existing products that compete with Unifrax products based on Bradley's use of Unifrax's trade secret and confidential and proprietary information to facilitate design changes.

21

137. Nutec, despite being aware of the alleged unlawful downloading of Unifrax confidential information by Bradley, as well as his prior job experience at Unifrax, still permitted Bradley to be directly involved in product changes to Nutec products utilizing confidential information of Unifrax.

138. On information and belief, Nutec incorporated the suggested engineering changes to Nutec products and is selling these products currently.

139. Non-exhaustive examples of this include that Bradley used Unifrax trade secret and proprietary information to implement Nutec product improvements and modifications that Bradley made to Nutec products that compete with Unifrax products, including those concerning: (a) Unifrax's high temperature modules for a wide range of heat processing vessels, which includes without limitation, anchoring/attachment systems, and (b) furnace hardware and accessories for a range of furnace lining applications.

140. Notably, Nutec changed its product line although the product had not been modified for years, and was only changed under Bradley's leadership.

141. These actions constitute a bad faith misappropriation of commercial advantage by exploiting the confidential, trade secret information of Unifrax.

142. Nutec's unfair competition caused Unifrax to suffer irreparable harm and damages in an amount to be determined at trial.

## V.    REQUEST FOR INJUNCTIVE RELIEF

143. Paragraphs 1-142 are incorporated herein by reference.

144. The Court is requested to take judicial notice of the Agreed Injunction that Bradley and Unifrax have entered into. See Dkt. No. 29.

145. Grounds support the award of injunctive relief against Nutec and Bradley.

146. 68. As a direct and proximate result of ~~Bradley~~Defendants's conduct, Unifrax has suffered, and will continue to suffer, irreparable harm in the loss of business opportunities, as well as harm of its goodwill and confidential information in an amount that cannot be fully, completely, and adequately remedied at law.

147. 69. Bradley has and continues to willfully violate the Agreement and his legal obligations to Unifrax, and therefore Unifrax has a reasonable likelihood of success on the merits.

148. Nutec continues to employ Bradley in a position that facilitates Bradley's use of Unifrax's proprietary business information and trade secrets that Bradley stole to directly benefit Nutec.

149. 70. Without injunctive relief against Bradley, he will continue to violate his obligations under the Agreement and other legal obligations, thereby causing Unifrax additional irreparable harm. In contrast, no harm will accrue to Bradley by entry of injunctive relief, as Bradley never had the right to violate his contractual obligations to Unifrax.

150. Absent injunctive relief against Nutec, Unifrax will continue to suffer irreparable harm and damages because Nutec's sole engineer—Bradley—is performing his job functions by using Unifrax's proprietary and confidential information and trade secrets.

151. 71. Unifrax requests that the Court issue an injunction against Bradley, prohibiting Bradley from disclosing Unifrax's confidential information in violation of his legal obligations and the Agreement.

152. Unifrax requests that the Court issue an injunction against Nutec, prohibiting it from (a) making use of any Unifrax information that Bradley obtained while a Unifrax employee, or (b) selling any products that were modified and/or improved using documents or information

23

that Bradley obtained from Unifrax. This injunction will not cause Nutec any harm because it should be able to run its business without making wrongful use of documents and/or information obtained from its competitor.

153. ~~72.~~ Injunctive relief is appropriate because protection and maintenance of Unifrax's confidential, proprietary, and trade secret information is a vital and legitimate business concern.  In the absence of injunctive relief, it is highly unlikely that Unifrax will have the ability to calculate precisely the extent of business losses associated with Bradley's violations of his legal obligations and the Agreement.

154. ~~73.~~ The public interest will not be harmed if an injunction is granted.

155. ~~74.~~ Given Bradley's willful and deliberate violations of his legal and contractual obligations, any bond required to be posted by Unifrax should be *de minimis*.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Unifrax respectfully requests that the Court grant the following relief:

A.    Issue an injunction against Bradley requiring specific performance of the Agreement and prohibiting Bradley from disclosing Unifrax's confidential information in violation of his legal and contractual obligations to Unifrax;

B.    Enter judgment in favor of Unifrax and against Bradley on all counts in an amount to be determined at trial and to pay damages to Unifrax, including, but not limited to, compensatory and punitive damages, costs, interest, and reasonable attorneys' fees;

C.    Issue an injunction against Nutec prohibiting Nutec from making use of confidential documents and information that Bradley obtained from Unifrax in violation of his legal and contractual obligations to Unifrax;

   D.  Enter judgment in favor of Unifrax and against Nutec on all counts in an amount to be determined at trial and to pay damages to Unifrax, including, but not limited to, compensatory and punitive damages, costs, interest, and reasonable attorneys' fees; and

   E.  C. Grant all other relief the Court deems just and proper in the circumstances.

Dated: March 31, 2023                                    Respectfully submitted,


/s/ V. Chisara Ezie-Boncoeur


V. Chisara Ezie-Boncoeur
(NY Bar No.5333224)
Mark S. Kittaka (admitted *pro hac vice*)
**BARNES & THORNBURG LLP**
201 S. Main Street, Suite 400
South Bend, IN 46601
Phone:  (574) 233-1171
Fax:  (574) 237-1125
(cezie@btlaw.com)

ATTORNEY**ATTORNEYS**          **FOR**
**PLAINTIFF**

26

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this ____ day of May 2022, a copy of the foregoing was filed electronically and will be served via private process server on the following:

Brian Bradley
6819 Bear Ridge Road
Lockport, New York 14094

/s/ V. Chisara Ezie-Boncoeur
V. Chisara Ezie-Boncoeur

27

Document comparison by Workshare Compare on Friday, March 31, 2023 2:55:40 PM

| Input: | |
|---|---|
| Document 1 ID | iManage://dms.btlaw.com/DMS/22623583/2 |
| Description | #22623583v2<dms.btlaw.com> - Unifrax/Bradley: Complaint  (NY Federal Court) (Final draft) |
| Document 2 ID | iManage://dms.btlaw.com/DMS/25806457/5 |
| Description | #25806457v5<dms.btlaw.com> - First Amended Complaint Unifrax/Bradley:   Complaint  (NY Federal Court)  Ver. 5 (Final Clean) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 325 |
| Deletions | 135 |
| Moved from | 1 |
| Moved to | 1 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 462 |

# EXHIBIT A

# The Carborundum Company

CARBORUNDUM

**Preface**

It is important to The Carborundum Company and to your progress within the Company that you be allowed free access to and communications with other Company personnel who may be engaged in research and development, the formulation of corporate strategy, or the development and protection of other corporate trade secrets, ranging all the way from confidential customers lists to esoteric formulas. The only way to make this possible is for you to agree to assign to the Company all inventions which you may make or conceive while here and to respect the confidentiality of our trade secrets.

Of course, many of the people at Carborundum are hired for the very purpose of making inventions and developing know-how. They, too, will be required to agree to assign all inventions and to protect the confidentiality of our trade secrets.

We also require our employees to agree that, after they leave the Company, they will not try to hire away other of our employees with whom they worked while here; furthermore, we require that you do not plan new competitive businesses while still on the Carborundum payroll.

We believe that the requirements of this agreement are reasonable. We ask that you read the agreement carefully and make sure that you receive a copy.

**Agreement**

MEMORANDUM OF AGREEMENT OF ____BRIAN R. BRADLEY____

(First Name, Middle Initial, Last Name)

residing at ____5652 Ide Road,  Burt, NY    14028____

with THE CARBORUNDUM COMPANY, a corporation of the State of Delaware with a principal office in the City of Niagara Falls, New York (hereinafter called the "Company"):

In consideration of my (past and future) employment by the Company and the salary the Company (has paid me and) will pay me therefor, I agree with the Company as follows:

1. I will disclose to the Patent Department of the Company any and all improvements, discoveries and inventions which I shall make or conceive, during the period of my employment by the Company, relating to any part of the Company's business or relating to any matter which has been or, during said period, may become the subject of investigation by the Company or any of its affiliated companies or in which the Company or any of its affiliated companies has been, or, during said period, may become interested, or which results from or is suggested by any work I may do for or at the request of the Company or any of its affiliated companies; and I agree that all such improvements, discoveries and inventions shall be and remain the sole and exclusive property of the Company or its nominees.

2. I will, whenever requested to do so by the Company, but entirely at its expense, execute any and all applications for Letters Patent, assignments or other instruments which the Company shall deem necessary in order to apply for and obtain Letters Patent of the United States or foreign countries for said improvements, discoveries and inventions and in order to secure for the Company or its nominees the sole and exclusive right, title and interest in and to said improvements, discoveries or inventions; and I will assist the Company and its nominees in every other possible way in securing the issuance of Letters Patent or in making effective or sustaining Letters Patent granted upon any such improvements, discoveries, or inventions, but entirely at its or their expense.

3. My obligation as set forth in Paragraphs 1 and 2 hereof shall continue beyond the termination of the period of my employment by the Company with respect to any and all improvements, discoveries, and inventions made or conceived by me during said period of my employment, and such obligations shall be binding on my assigns, executors, administrators or other legal representatives.

4. My obligations as set forth in Paragraphs 1 and 2 hereof are made with the understanding that they shall not require communication or assignment to the Company of the following inventions (listed below), whether or not they shall hereafter be covered by applications for or the issuance of any Letters Patent:

5. No invention not listed in Paragraph 4 hereof shall be hereafter asserted by me to have been made before the commencement of my employment by the Company.

6. All information as to any of the Company's trade secrets which shall come into my possession shall be deemed confidential; and I will not divulge any such information to any person, firm or corporation, except such as shall be entitled to be advised thereof. I understand that the term "The Company's trade secrets" means confidential information and information proprietary to the Company, whether developed by me or others, and consists of any formula, pattern, device, compilation of information or data used in the Company's business which gives it an opportunity to obtain an advantage over competitors who do not know or use it. It may include, but is not limited to: a formula for a chemical compound; a process of manufacturing, treating or preserving materials; a pattern for a machine or other device; a list of customers or suppliers; data with regard to technical developments; specifications or drawings; price, cost and customer and merchandising information.

7. During the term of my employment or at any time thereafter, I will not use any of the Company's trade secrets in any business or enterprise, nor will I aid, abet or assist any person or company in using any such secrets. If either before or after termination of my employment with the Company I decide to use other than for the Company or disclose outside the Company information of the kind included in the description of the Company's trade secrets in Paragraph 6 hereof which I believe to be either confidential or proprietary to the Company, I will advise the Company of such decision promptly and in writing, specifying the information I intend to use or disclose.

8. All memoranda, including but not by way of limitation, all figures, notes, reports, data, documents, accounts, plans, drawings, formulae and recipes furnishing or containing any information as to the Company's trade secrets which shall come into my possession at any time during the period of my employment or otherwise shall nonetheless be and remain the property of the Company; and I will not deliver or aid in the delivery of any such memoranda nor divulge the contents thereof to any other person, firm or corporation; and, upon the termination of my said employment, I will not take with me or keep in my possession or make or retain copies of any such memoranda relating to the matters above set forth, but, on the contrary, will turn them over to the Company or its agent duly authorized to receive them.

9. I agree that during my employment and the two years next following the termination of my employment with the Company, I will not directly or indirectly or by act in concert with others, employ or attempt to employ or solicit for any employment competitive with the Company, any of the Company's employees who work in any area wherein I have myself been significantly engaged on behalf of the Company.

10. I agree that during my employment I will undertake no planning for or organization of any business activity competitive with the work I perform, or with the profit unit I work in as an employee of the Company, nor will I combine or conspire with other employees of the Company for the purpose of organizing of any such competitive business activity.

11. I will notify my supervisor before engaging in any form of regular employment other than for this Company while I am employed by the Company. I am presently not subject to any existing contract which could affect my employment at this Company or my ability to perform in accordance with the terms of this Agreement except as stated below:

12. This Agreement is and shall be construed to be divisible and separable with the effect that if any provision or provisions hereof shall at any time be found or declared invalid or unenforceable, by competent judicial authority, such finding or declaration shall not impair the remaining provisions hereof, but the same shall remain valid and enforceable.

13. Nothing contained herein shall be construed to mean that this Memorandum of Agreement gives me a right to be employed by the Company for a definite term. I understand that my term of employment is indefinite and may be terminated at any time by the Company or the employee.

14. My obligations under this Memorandum of Agreement shall inure to the benefit of the Company, its affiliated companies, and their respective successors and assigns and shall be binding upon my assigns, executors, administrators or other legal representatives.

I have received a copy of this Memorandum of Agreement. Before accepting employment with an enterprise, company, partnership or individual that competes with the Company in an area where I have been significantly engaged, I will make a copy of this Memorandum of Agreement available to my prospective employer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my seal this ___10/24___ day of ___ 19 88, at

_Niagara Falls, NY_

(Signature) _Brian R. Bradley_ ___ (L.S.)
(First Name, Middle Initial, Last Name)

Witnesses: _Robin A. Lynch_
(First Name, Middle Initial, Last Name)

CARBORUNDUM

Form Go-103   Rev. 11/1/72

A Kennecott Company

CARBORUNDUM

Memorandum of Agreement of ___BRIAN R. BRADLEY___    Date of Birth ___3/26/65___
(First Name, Middle Initial, Last Name)

residing at ___5652 Ide Road, Burt, NY  14028___    with The Carborundum Company.

Division ___FIBERS___    Branch ___Marketing___
(Name of Branch & Responsibility No.)

Place (where signed) ___Niagara Falls, NY   (WTC)___    Date (of signing) ___10/24 88___    ___59-383___

# EXHIBIT B

**From:** Brian Bradley <bbradley@unifrax.com>
**Sent:** April 22, 2022 7:29 AM
**Subject:** [EXTERNAL]: Resignation from Alkegen

Earlier this morning, after 33+ years of service, I submitted my letter of resignation to Alkegen.  I will be joining Nutec USA in the capacity of Business Manager - Engineered Systems.  Essentially, their application engineer and product manager for USA/Canada operations.  I will remain at my current residence in Western New York, no relocation.  I would like to thank everyone for all of their professional support, but most importantly friendship over the course of my career.  At some point, we all shared a good laugh and those will be the memories that I will take with me. I also thank you for your cooperation and patience with me as I transitioned from application engineering into field sales over the last 3 years.  I sincerely wish all of you the best and brightest futures and am hopeful that our paths may cross again someday.  My new contact information is provided below.  Please note that the new business email may not be active for a few days.

**Cell Phone:**        ▮▮▮▮-8336

**Personal Email:** ▮▮▮▮▮▮@gmail.com

**Business Email:** brianbradley@Nutec.com

**Brian R. Bradley**
Sr. Sales Engineer NY, PA, NJ, MA, RI, CT, VT, NH, ME

ALKEGEN
Thermal Management
600 Riverwalk Parkway Suite 120,Tonawanda, NY 14150
Cell: 716-573-1299
www.Alkegen.com